IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

FILED IN OPEN COURT
11/23/10
TIMOTHY M. O'BRIEN, CLERK
BY _____
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CASE NO. 10-20086-KHV |
| vs ) | |
| ) | |
| PATRICK PORTER ) | |
| ) | |
| Defendant. ) | |

## PLEA AGREEMENT PURSUANT TO FED. R. CRIM. P. 11(c)(1)(C)

The United States of America, by and through Kim I. Martin, Assistant United States Attorney, and Patrick Porter, the defendant, personally and by and through his attorney, Kirk Redmond, hereby enter into the following plea agreement pursuant to Rule 11(c)(1)(C) of the Federal Rules of Criminal Procedure:

1.      **Defendant's Guilty Plea.**  If the Court permits, the defendant agrees to plead guilty to Count 4 of the indictment filed on June 17, 2010 which charges a violation of Title 18, United States Code, §§ 2251(a), that is, production of child pornography.  By entering into this plea agreement, the defendant admits to knowingly committing this offense, and to being guilty of it  The defendant understands that the maximum sentence which may be imposed as to Count 4 of the Indictment to which the defendant has agreed to plead guilty is not less than 15 years of imprisonment, a $250,000 fine, a period of years not less than 5 years and not more than life of supervised release, and a $100 mandatory special assessment.

2.  **Factual Basis for the Guilty Plea**. The parties agree the facts constituting the offense to which the defendant is pleading guilty are as follows:

On 05/03/10 JP came into the Overland Park Kansas Sanders Police Station. JP reported he believes his father, Patrick Porter, is sexually abusing his step-sister and step-brother, JS and HS. JS was taken out of school in her eighth grade year due to behavior problems. Once she started staying at home she began sleeping downstairs in the family room with Patrick Porter. She would sleep on the floor or on another couch. Mr. Porter claimed he needed her to wake him up in the mornings.

On 05/01/10 JP found two pages of HS's journal on his dresser. JP explained the journal were thoughts HS had and needed to write down. The writing stated he liked drinking. HS wished they would start drinking earlier. If they did, maybe "she" would do stuff to him when she was awake and touch him with her hand. Finally he read, Dad, I really liked it when you let me go into her pussy. Another sexual reference was that he liked when she gets him off. HS wrote that it was different from when Mr. Porter gets him off. The journal was addressed to Mr. Porter. From the writing, JP was able to understand the "she" was in reference to JS.

On 05/03/10 JP confronted HS about his journal as they were getting up for school. HS claimed he did not know what JP was talking about. As they walked to school, JP asked what he, JS and Mr. Porter would do while he was gone from the house. HS said he did not know what he was talking about. JP finally told him he knew what they were doing while he and KP (JP's biological sister), were gone on the weekends. HS never admitted to JP sexual things were happening. JP asked him if they were on the same page about the three of them. HS told him they were. JP asked

him how long it had been going on. HS said he did not know. JP asked about JS and Mr. Porter. HS said they had been going on a long time before he had gotten involved.

JS is home schooled and stays home full-time. Patrick Porter assigns JS's home school work from his cell phone. JS uses her Yahoo instant messaging account on her Dell laptop computer to contact him.

Two weeks prior to reporting this incident, JP stayed home from school. JS left the house to pick up her little sister from school. JP looked at the instant messages. He found a message asking Mr. Porter to think of her wet, soapy and naked. In addition he found statements where she called Mr. Porter love, dear and babe.

JP spoke to his father about messages later that day. He said he saw JS's messages and questioned his relationship. Mr. Porter denied any inappropriate relationship with JS. When Mr. Porter asked JP for examples, he told his dad about the pet names JS calls him. JP did not tell him about the shower comment. JP accused his father of lying. As they continued to talk the angrier Mr. Porter became at him. Mr. Porter said JS is the only one who loves him in the family. He added that JP should not question him about his relationship. Finally, Mr. Porter admitted JS had inappropriate thoughts of him. JP asked if she ever acted on her thoughts. Mr. Porter did admit she has acted out her thoughts. Mr. Porter would not tell JP what she had done. Mr. Porter has not gotten JS any counseling because she has done nothing bad. He also stated he likes it because she is the only one who helps him or cares about him. JP finally dropped the subject because he became scared about what he had learned.

On the evening of 05/03/10 Detective Brian Keating went to the Porter residence. Detective Keating spoke with Patrick and Barbara Porter. JS and HS were

3

also contacted. All parties involved stated that there was no sexual contact between Patrick and his step-children. Patrick did say JS does call him dear, love and other names, but they do not mean anything more than a father-daughter relationship. JS and HS were taken into police protective custody.

Barbara Porter signed a consent form to search without a Search Warrant for JS's computer. The computer was taken to the Heart of America Regional Computer Forensic Laboratory (HARCFL).

On 05/24/10 Sergeant Barbara Walk was contacted by Detective Billy McGuire, who examined the computer provided on consent by Barbara Porter. Several messages between Mr. Porter and JS were recovered from the computer. The message JP saw when he looked at the instant messages was located. There were several message stating "I love you" were sent. She requested permission to eat, exercise, and take a shower. A few messages indicate that JS and PS smoked marijuana together.

On 05/27/10 Barbara Porter contacted Sergeant Barbara Walk voicemail. The message indicated she wanted JS's computer returned. Sergeant Walk did not listen to the message until 06/01/10. Due to what was found on the computer, it is now considered evidence in this investigation.

Further investigations revealed KP advised a couple months to a year ago, her father has a camera which the family utilizes. While looking at the pictures stored on the camera, KP found nude photos which were obviously self-produced by JS. KP described the photos as being of JS's nude "chest and lower area" (referring to genital area). KP advised the photos were "arms length away" and in some of the

4

photos JS's arm could be seen. KP stated she immediately went to her dad. KP stated her dad advised he had no idea what she was talking about. He informed her he would have JS delete the photos.

KP advised her dad had a huge case which was black with dark grey lining normally kept in the office of the home. KP stated this case is where all the burned dvds containing movies described as scary and funny types of movies would be stored. In the back of these dvds, KP stated she found dvds with the name "JS" marked on them. KP stated she began to wonder why these dvds were marked as such. She stated none of the other family members had videos or photos taken solely of a family member. She related she never viewed what was on the dvds. KP stated the video camera is normally kept in the family room by the fireplace or in the office or in her parent's bedroom.

JP could not remember when he saw this, but he did see pictures of naked young girls on his dad's computer. This was on his father's old work laptop. The computer is no longer used by Mr. Porter. When JP asked about the photographs, Mr. Porter said they were for HS. HS and JS were asked about looking at these pictures when they were interviewed the following weeks. Both admitted Mr. Porter showed them photographs of naked children and adults from the internet. JS admitted she was also shown pictures of adults having sex.

As a result of the above investigation and statements, a search warrant was obtained through the Johnson County Kansas District Court for the Porter residence, 6105 W 158th Street, Overland Park Kansas. The warrant was for computer equipment and related storage media. The warrant was executed June 3, 2010. Numerous computers and storage devices were recovered during the service of the

warrant.

Upon execution of the search warrant the children were placed in protective custody with the State of Kansas. Authorities placed the children with their maternal grandmother. The defendant with the help of his wife Barbara removed JS from protective custody. The defendant then fled Kansas with JS causing an Amber alert to be issued. The defendant was ultimately found and arrested in California.

A preview of the storage media seized from the defendant's residence revealed numerous images of JS, in sexually explicit poses. Several of these images focus on her genitalia and meet the statutory definition of definition child pornography. Many of those pictures were identified by JS as having been taken by the defendant. Some of the photos dated back to when JS was approximately 10 years old.

There were also other images of child pornography, not involving JS, located on the disk with the images of JS. There were sexually explicit images of Patrick Porter and Barbara Porter located on the disk with the images of JS.

On June 7, 2010 agents examined the images mentioned above and the associated EXIF data. The EXIF data indicates the images were taken with an Epson Digital Camera, Epson digital cameras are known to be manufactured outside the State of Kansas.

JS has been identified as being a minor child, date of birth 08/04/1993.

3. **Proposed (c)(1)(C) Sentence.** The parties propose, as an appropriate disposition of the case, a sentence of 240 months in prison for Counts 4 charging a violation of Title 18, United States Code, § 2251(a); an amount of restitution to be

determined by the District Court at sentencing; the amount of supervised release will be determined by the District Court at the time of sentencing; and the mandatory special assessment of $100 to be paid during the defendant's incarceration. The parties seek this binding plea agreement as an appropriate disposition of the case because it brings certainty to the sentencing process and assures that the defendant and the government will benefit from the bargain they have struck if the Court permits itself to be bound by the proposed sentence; the interests of justice are served by the sentence, thereby assuring that the sentence is consistent with the sentencing factors of 18 U.S.C. § 3553(a); and if the Court does not agree with the sentence, the parties may be restored to the positions they maintained prior to reaching this plea agreement. This agreement centers on the defendant's agreement to enter his guilty plea as soon as the Court's schedule permits, thereby preserving valuable Court, prosecution, public defender, probation office, U.S. Marshals Service and other law enforcement resources.

    **4.** **Application of the Sentencing Guidelines.** The parties are of the belief that the proposed sentence does not offend the now advisory sentencing guidelines because the parties are requesting a sentence within the anticipated guideline range.

    **5.** **Government's Additional Agreement .** In return for the defendant's plea of guilty as set forth herein, the United States Attorney for the District of Kansas also agrees to not file any additional charges against the defendant arising out of the facts forming the basis for the Indictment. Further, the government will dismiss at the time of sentencing all remaining counts of the Indictment.

6. **Whether to Accept the Proposed Plea Agreement and Sentence is Up to the Court.** The Court has no obligation to accept the proposed plea agreement and sentence. It is solely within the Court's discretion whether to accept the proposed binding plea agreement as an appropriate disposition of the case.

7. **Withdrawal of Plea Permitted Only if the Court Does Not Accept the Plea Agreement and Proposed Sentence.** On the other hand, if the Court agrees to be bound by proposed plea agreement and accepts the defendant's plea of guilty, the defendant will not be permitted to withdraw it. Only if the Court rejects the proposed plea agreement will the defendant be permitted to withdraw his guilty plea.

8. **Payment of Special Assessment.** The defendant understands that a mandatory special assessment of $100 per count will be entered against the defendant at the time of sentencing. The parties acknowledge the defendant is without adequate resources to pay the special assessment at the time of sentencing and agree to recommend that the Court order payment to occur during the defendant's period of incarceration.

9. **Waiver of Appeal and Collateral Attack.** If the Court agrees to the proposed plea agreement, the defendant knowingly and voluntarily waives any right to appeal or collaterally attack any matter in connection with this prosecution, conviction and sentence. The defendant is aware that Title 18, U.S.C. § 3742 affords a defendant the right to appeal the conviction and sentence imposed. By entering into this agreement, the defendant knowingly waives any right to appeal a sentence imposed

8

which is within the guideline range determined appropriate by the court. The defendant also waives any right to challenge a sentence or otherwise attempt to modify or change his sentence or manner in which it was determined in any collateral attack, including, but not limited to, a motion brought under Title 28, U.S.C. § 2255 [except as limited by *United States v. Cockerham*, 237 F.3d 1179, 1187 (10th Cir. 2001)], a motion brought under Title 18, U.S.C. § 3582(c)(2), and a motion brought under Fed. Rule of Civ. Pro. 60(b). In other words, the defendant waives the right to appeal the sentence imposed in this case except to the extent, if any, the court departs upwards from the applicable sentencing guideline range determined by the court. However, if the United States exercises its right to appeal the sentence imposed as authorized by Title 18, U.S.C. § 3742(b), the defendant is released from this waiver and may appeal the sentence received as authorized by Title 18, U.S.C. § 3742(a).

      **10.** **Waiver of FOIA Request.** The defendant waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, Title 5, U.S.C. § 552, or the Privacy Act of 1974, Title 5, U.S.C. § 552a.

      **11. Sex Offender Registration.** The defendant has been advised and understands, that under the Sex Offender Registration and Notification Act, a federal law, the defendant must register and keep the registration current in each of the following jurisdictions: the location of the defendant's residence, the location of the defendant's employment; and, if the defendant is a student, the location of the

defendant's school.  Registration will require that the defendant provide information that includes the name, residence address and the names and addresses of any places at which the defendant is or will be an employee or student.  The defendant understands that he must update his registrations not later than three business days after any change of name, residence, employment or student status.  The defendant understands that failure to comply with these obligations subjects the defendant to prosecution for failure to register under federal law, Title 18, United States Code, Section 2250, which is punishable by a fine or imprisonment, or both.

    12. **Full Disclosure by United States**.  The defendant understands the United States will provide to the court and the United States Probation Office all information it deems relevant to determining the appropriate sentence in this case.  This may include information concerning the background, character, and conduct of the defendant including the entirety of the defendant's criminal activities.  The defendant understands these disclosures are not limited to the count to which the defendant has pled guilty.  The United States may respond to comments made or positions taken by the defendant or defendant's counsel and to correct any misstatements or inaccuracies.  The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement.  The defendant also has the right to provide information concerning the offense and to make recommendations to the court and the United States Probation Office.

    13. **Parties to the Agreement**.  The defendant understands this plea agreement binds only the defendant and the United States Attorney for the District of

Kansas, and that it does not bind any other federal, state, or local prosecution authority.

14. **No Other Agreements.** The defendant has had sufficient time to discuss this case, the evidence, and this agreement with the defendant's attorney and defendant is fully satisfied with the advice and representation provided by defendant's counsel. Further, the defendant acknowledges that he has had the plea agreement read to him, understands it and agrees it is true and accurate and not the result of any threats, duress or coercion. The defendant further understands that this plea agreement supersedes any and all other agreements or negotiations between the parties, and that this agreement embodies each and every term of the agreement between the parties. The defendant acknowledges that the defendant is entering into this agreement and is pleading guilty because the defendant is guilty and is doing so freely and voluntarily.

_____  Date: 11-23-10

SCOTT RASK, # 15643
Criminal Chief/Supervisor
500 State Ave., Suite 360
Kansas City, KS 66101
(913) 551-6730 (telephone)
(913) 551-6541 (facsimile)
E-mail: scott.rask@usdoj.gov

_____  Date: 11-23-10

KIM I. MARTIN, # 13407
Assistant United States Attorney
500 State Avenue, Suite 360
Kansas City, Kansas 66101
(913) 551-6730 (telephone)
E-mail: kim.martin@usdoj.gov

11

_____   Date: 11-23-10
PATRICK
P~~ARTICK~~ PORTER
Defendant


_____   Date: 11-23-10

KIRK REDMOND
Assistant Federal Public Defender
500 State Avenue Suite #201
Kansas City, Kansas 66101
Attorney for Defendant